UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH AUSTIN,<br><br>    Plaintiff,<br><br>v.<br><br>GIBSON ELECTRIC AND TECHNOLOGY SOLUTIONS, a wholly-owned subsidiary of EMCOR GROUP, INC.,<br><br>    Defendant. | FILED:  MAY 9, 2008<br>08CV 2704 NF<br>JUDGE ZAGEL<br>MAGISTRATE JUDGE BROWN<br><br><br>**Plaintiff Demands Trial by Jury** |

## PLAINTIFF'S COMPLAINT AT LAW

Plaintiff, Keith Austin (hereinafter "Austin"), by and through his attorneys, Caffarelli & Siegel Ltd., for his Complaint at Law, complains against Defendant Gibson Electric and Technology Solutions (hereinafter "Gibson" or the "Company"), a wholly-owned subsidiary of EMCOR Group, Inc., as follows:

### NATURE OF ACTION

1.  This is a cause of action for damages and injunctive relief caused by Defendant's discrimination on the basis of race against Austin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"), and Defendant's unlawful retaliation against Austin in violation of Title VII and Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 (hereinafter "Section 1981").

### JURISDICTION AND VENUE

2.  This court has jurisdiction of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

3. Austin has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000(e). On or about May 19, 2003, he filed a timely charge of discrimination, No. 210-2003-32628 (hereinafter "Charge I"), with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"). This Charge alleged that he had been discriminated against on the basis of his race, in violation of Title VII.

4. As a result of its investigation, on May 19, 2004 the EEOC issued a "cause" finding with regard to Charge I. The EEOC specifically found "reasonable cause to believe that [Defendant] discriminated against [Austin] by failing to promote him in violation of Title VII."

5. Approximately one month after the EEOC issued a cause finding with regard to Charge I, Austin experienced unfounded discipline from the Company. On September 24, 2004 – 128 days after the EEOC issued a cause finding with regard to Charge I, the Company terminated Austin's employment.

6. On or about September 27, 2004, Austin filed a timely charge of discrimination, No. 210-2004-07672 (hereinafter "Charge II"), with the EEOC. This Charge alleged that he had been retaliated against in violation of Title VII.

7. As a result of its investigation, on April 4, 2005 the EEOC issued a "cause" finding with regard to Charge II, which indicates that the EEOC has found "reasonable cause to believe that [Defendant] discriminated against [Austin] based on retaliation in that he was disciplined and discharged, in violation of Title VII."

8. On or about April 30, 2008, Austin received Notices of Right to Sue on his Charges of Discrimination. This Complaint is being filed within ninety (90) days of receipt of the Notices of Right to Sue, copies of which are attached as Exhibits A and B.

9. The unlawful employment practices described herein were committed in the State of Illinois, at Gibson's facilities in Oak Brook, Illinois. Accordingly, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

10. Plaintiff Keith Austin is a resident of Broadview, Illinois. His race is Black. He was hired by Gibson on March 16, 1999. At the time of his termination on September 24, 2004, he held the position of Warehouse Driver.

11. Defendant Gibson Electric and Technology Solutions is a New Jersey corporation doing business in Illinois, with its facility located at 3100 Woodcreek Drive, Oak Brook, Illinois 60515. Gibson is a wholly-owned subsidiary of EMCOR Group, Inc., a Fortune 500® company with over $5.9 billion in annual revenues. Gibson specializes in the design, installation, and maintenance of distribution systems. At the time of Austin's termination, Gibson employed well over five hundred (500) employees; Gibson is one of Chicagoland's largest electrical and telecommunications contractors.

## FACTUAL ALLEGATIONS

12. Austin worked primarily as a Warehouse Driver for the Defendant from on or about March 17, 1999 until his termination on or about September 24, 2004.

13. During his employment with Defendant, Austin performed his job satisfactorily at all times, and had an excellent employment record.

14. When Austin began working for Defendant, his Warehouse Supervisor was Jim Walsh, a White male.

15. During his employment, Walsh took numerous medical leaves. On occasion, Walsh's leaves extended for a period of months.

16. During Austin's employment, he assumed the majority of Walsh's job duties when Walsh was absent due to medical leaves, vacation time, regular time off, or other reasons.

17. During Walsh's absences from work, Austin satisfactorily performed the functions of the Warehouse Supervisor position.

18. Austin was trained in all aspects of the Warehouse Supervisor position, and was groomed to assume the Warehouse Supervisor position.

19. On June 12, 2002, Austin's performance evaluation, completed by Defendant, indicated that one major objective for the coming year was that Austin was to become Assistant Warehouseman.

20. On or about April 1, 2003, Defendant posted notice that the position of Warehouse Supervisor had become available.

21. Austin informed Defendant that he was interested in the position of Warehouse Supervisor, and was interviewed for the position on or about April 3, 2003.

22. Defendant did not promote Austin from Warehouse Driver to fill the open Warehouse Supervisor position.

23. On or about May 6, 2003, Defendant hired John Tricoci, a non-Black male, to fill the position of Warehouse Supervisor.

24. At the time of his hire, Tricoci did not have the experience or knowledge of the position that Austin had acquired during his time with the Defendant.

25. At the time of his hire, Tricoci did not possess certain certifications, such as the forklift certification and/or the State of Illinois CDL license, necessary to perform the duties listed as required in the Warehouse Supervisor job description.

26. At the time of Tricoci's hire, Austin was assigned to train him in aspects of the Warehouse Supervisor position.

27. On or about May 20, 2003, Austin filed Charge I, alleging that the Defendant had discriminated against him by failing to promote him and hiring a less qualified non-Black employee from outside the Company, in violation of Title VII.

28. On May 19, 2004 the EEOC issued a "cause" determination on Austin's EEOC Charge I, which was delivered to the Company.

29. In or around June 2004, Tricoci requested that Austin arrive at work early one day. However, when Austin arrived per Tricoci's instructions, he was pretextually written up for working overtime without authorization.

30. In or around June 2004, Defendant pretextually wrote Austin up for making a wrong delivery stop, and refused to remove the write-up from Austin's file until it conducted an investigation at the request of Austin and found that Austin had not made a wrong delivery stop.

31. After June 2004, in an attempt to establish a pretext for terminating Austin in retaliation for Charge I, then-Senior Vice President of the Company, Daniel Fitzgibbons, coerced numerous employees of the Defendant to wrongfully implicate Austin in unlawful, unethical, and/or terminable offenses which Austin did not commit.

32. On or around September 22, 2004, Fitzgibbons contacted one of Austin's co-workers, an employee of the Defendant, and asked him to sign and submit a false statement alleging that Austin had sold drugs and made verbal threats towards him and his family.

33. On or around September 23, 2004, Fitzgibbons contacted another of Austin's co-workers, an employee of the Defendant, and asked him to sign and submit a false statement that Austin was a drug dealer who had threatened him.

34. Fitzgibbons wanted to terminate Austin as retaliation for Austin's filing of EEOC Charge I and the fact that the EEOC found in favor of Austin.

35. Defendant threatened to terminate and/or discipline employees who refused to sign false statements presented to them by Defendant regarding Austin's behavior.

36. In light of Fitzgibbons' threats, Austin's co-workers provided false statements to Defendant regarding Austin's behavior.

37. On or about September 24, 2004, Austin was told that the Company determined that he had been selling drugs to Defendant's employees.

38. On or about September 24, 2004, Austin was frisked by employees of the Defendant for drugs and weapons. No drugs or weapons were found.

39. Defendant offered Austin the opportunity to resign, and informed him that if he resigned, Defendant would not contest his application for unemployment insurance benefits.

40. Austin refused the offer to resign, and denied that he had sold drugs, made threats, or carried a gun.

41. Austin was pretextually terminated on or about September 24, 2004 in retaliation for filing Charge I.

## COUNT I – TITLE VII
## DISCRIMINATION ON THE BASIS OF RACE

42. Plaintiff incorporates paragraphs 1-41 as though fully restated herein.

43. Austin was the most qualified individual who applied for the vacant Warehouse Supervisor position in or around April 2003.

44. Defendant typically fills open positions by promoting employees from within the Company.

45. Defendant offered the Warehouse Supervisor position to a non-Black individual from outside the Company.

46. Defendant failed to offer Austin the promotion from Warehouse Driver to Warehouse Supervisor based upon Austin's race, Black.

47. As a direct and proximate result of said act of discrimination, Austin has suffered and continues to suffer irreparable injury, including loss of employment, income, and other benefits, and has suffered and continues to suffer emotional distress, costs, expenses, and damage to his reputation.

48. Defendant's failure to promote Austin based on his race was willful and outrageous, warranting the imposition of punitive damages.

## COUNT II – TITLE VII RETALIATION

49. Plaintiff incorporates paragraphs 1-48 as though fully restated herein.

50. Defendant disciplined Austin in June 2004 even though Austin had not committed any violations of Company policy or protocol.

51. Defendant disciplined Austin in June 2004 in retaliation for Austin's Charge of Discrimination with and "cause" finding from the EEOC.

52. After June 2004 and until Austin's termination, Defendant falsified statements alleging that Austin dealt drugs, made threats, and/or carried a gun, and then coerced its employees to sign these falsified statements.

53. At the time that Defendant coerced statements from its employees, Defendant knew of Austin's EEOC Charge I, and also had knowledge of the EEOC's "cause" finding.

54. Defendant coerced statements from its employees in an effort to build evidence against Austin.

55. Defendant planned to terminate Austin because Austin had filed a Charge of Discrimination against the Company and had received a "cause" finding from the EEOC.

56. By disciplining and terminating Plaintiff's employment in the manner described herein, Defendant Company has retaliated against Plaintiff in violation of Title VII.

57. As a direct and proximate result of Plaintiff's unlawful discharge, Austin has suffered and continues to suffer irreparable injury, including loss of employment, income, and other benefits, and has suffered and continues to suffer emotional distress, costs, great expenses, and damage to his reputation.

58. Defendant's retaliation against Austin for filing an EEOC Charge was willful and outrageous, warranting the imposition of punitive damages.

## COUNT III – SECTION 1981 RETALIATION

59. Plaintiff incorporates paragraphs 1-58 as though fully restated herein.

60. By terminating Austin's employment as described above and in Count II of this Complaint, Defendant has retaliated against Austin for asserting his right to make and enforce his employment contract regardless of his race, in violation of Section 1981.

61. As a direct and proximate result of Defendant's unlawful conduct, Austin has suffered and continues to suffer irreparable injury, including loss of employment, income, and other benefits, and has suffered and continues to suffer emotional distress, costs, great expenses, and damage to his reputation.

62. Defendant's retaliation against Austin in violation of Section 1981 was willful and outrageous, warranting the imposition of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Keith Austin respectfully requests that this Court enter a judgment:

(a)    Declaring that the acts of Defendant in failing to promote Austin, as described herein, constitute unlawful discrimination in violation of Title VII;

(b)    Declaring that the acts of Defendant in retaliating against and terminating Austin, as described herein, constitute unlawful retaliation in violation of Title VII;

(c)    Declaring that the acts of Defendant in retaliating against and terminating Austin, as described herein, constitute unlawful retaliation in violation of Section 1981;

(d)    Enjoining and permanently restraining these violations of Title VII;

(e)    Enjoining and permanently restraining these violations of Section 1981;

(f)    Directing Defendant to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Austin's or other employees' employment opportunities;

(g)    Awarding Austin front pay and compensation for lost future earnings until such time as Austin is able to secure work that is comparable to the work he would have received had no unlawful violations taken place;

(h)    Directing Defendant to make Austin whole for all earnings he would have received but for the Company's discriminatory and retaliatory acts, including but not limited to ordering back pay for all Austin's wages and other benefits;

(i)    Awarding Austin compensatory and punitive damages for each of Defendant's violations of Title VII and Section 1981, in amounts to be determined at trial;

(j)     Awarding Austin his reasonable attorneys' fees and costs as provided by §706(k) of Title VII, 42 U.S.C. §2000e-5(k), and §1988(b).

(k)     Awarding Austin such further and additional relief as the Court may deem just and proper.

Dated: May 9, 2008                                       Respectfully submitted,

                                                         KEITH AUSTIN

                                                         By: _____
                                                             Attorney for Plaintiff

Alejandro Caffarelli, #06239078
Lorraine T. Peeters, #06290434
Caffarelli & Siegel Ltd.                                 **JURY DEMAND**
Two Prudential Plaza
180 North Stetson Ste. 3150                              Plaintiff demands a jury to hear and decide
Chicago, IL  60601                                       all issues of fact.
Tel. (312) 540-1230
Fax (312) 540-1231                                       _____
                                                         Attorney for Plaintiff