UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH AUSTIN, | ) | |
| | ) | |
| Plaintiff, | ) | 08CV 2704 NF |
| | ) | |
| v. | ) | District Judge Zagel |
| | ) | |
| GIBSON ELECTRIC AND | ) | Magistrate Judge Brown |
| TECHNOLOGY SOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S AMENDED ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant Gibson Electric Co., Inc.,[1] through its undersigned counsel, hereby answers the Complaint filed by Plaintiff Keith Austin by denying each and every allegation not specifically admitted.

**NATURE OF ACTION**

1. This is a cause of action for damages and injunctive relief caused by Defendant's discrimination on the basis of race against Austin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"), and Defendant's unlawful retaliation against Austin in violation of Title VII and Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 (hereinafter "Section 1981").

**ANSWER:** Defendant admits that Plaintiff asserts the claims described in Paragraph 1. Defendant denies all remaining allegations, including Plaintiff's allegation that Defendant violated the statutes invoked or otherwise committed any unlawful acts with respect to Plaintiff.

---

[1] Defendant's proper corporate name is Gibson Electric Co., Inc.

## JURISDICTION AND VENUE

2. This court has jurisdiction of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

**ANSWER:** Defendant admits the allegations contained in Paragraph 2.

3. Austin has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000(e). On or about May 19, 2003, he filed a timely charge of discrimination, No. 210-2003-3268 (hereinafter "Charge I"), with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"). This charge alleged that he had been discriminated against on the basis of his race, in violation of Title VII.

**ANSWER:** Defendant denies the allegations contained in Paragraph 3. Plaintiff filed two EEOC charges alleging that he was not promoted because of his race. Neither charge was filed on May 19, 2003, and neither had merit.

4. As a result of its investigation, on May 19, 2004 the EEOC issued a "cause" finding with regard to Charge I. The EEOC specifically found "reasonable cause to believe that [Defendant] discriminated against [Austin] by failing to promote him in violation of Title VII."

**ANSWER:** Defendant admits that the EEOC issued a "cause" finding on March 30, 2004 with the language quoted in Paragraph 4. Defendant denies all remaining allegations of Paragraph 4, including the allegation that the EEOC's finding was "reasonable" and based on the results of an investigation.

5. Approximately one month after the EEOC issued a cause finding with regard to Charge I, Austin experienced unfounded discipline from the Company. On September 24, 2004, 128 days after the EEOC issued a cause finding with regard to Charge I, the Company terminated Austin's employment.

**ANSWER:** Defendant admits that Plaintiff was terminated on September 23, 2004, but denies all remaining allegations contained in Paragraph 5.

6. On or about September 27, 2004, Austin filed a timely charge of discrimination, No. 210-2004-07672 (hereinafter "Charge II"), with the EEOC. This Charge alleged that he had been retaliated against in violation of Title VII.

**ANSWER:** Defendant admits the allegations contained in Paragraph 6 of the Complaint, but denies the allegations contained in Plaintiff's EEOC charge.

7. As a result of its investigation, on April 4, 2005 the EEOC issued a "cause" finding with regard to Charge II, which indicates that the EEOC has found "reasonable cause to believe that [Defendant] discriminated against [Austin] based on retaliation in that he was disciplined and discharged, in violation of Title VII."

**ANSWER:** Defendant admits that the EEOC issued a "cause" finding on March 9, 2005. Defendant denies all remaining allegations contained in Paragraph 7, including the allegation that the EEOC's finding was "reasonable" and based on the results of an investigation.

8. On or about April 30, 2008, Austin received Notices of Right to Sue on his Charges of Discrimination. This Complaint is being filed within ninety (90) days of receipt of the Notices of Right to Sue, copies of which are attached as Exhibits A and B.

**ANSWER:** Defendant admits the allegations contained in Paragraph 8.

9. The unlawful employment practices described herein were committed in the State of Illinois, at Gibson's facilities in Oak Brook, Illinois. Accordingly, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

**ANSWER:** Defendant admits that venue is proper in the Northern District of Illinois, but denies all remaining allegations of Paragraph 9.

## PARTIES

10. Plaintiff Keith Austin is a resident of Broadview, Illinois. His race is Black. He was hired by Gibson on March 16, 1999. At the time of his termination on September 24, 2004, he held the position of Warehouse Driver.

**ANSWER:**    Defendant admits that Plaintiff is African-American, was hired on March 17, 1999, and held the position of Warehouse Driver when he was terminated on September 23, 2004. Defendant is without sufficient information or knowledge to either admit or deny the location of Plaintiff's residence, and therefore denies that allegation. Defendant denies all remaining allegations contained in Paragraph 10.

    11.    Defendant Gibson Electric and Technology Solutions is a New Jersey corporation doing business in Illinois, with its facility located at 3100 Woodcreek Drive, Oak Brook, Illinois 60515. Gibson is a wholly-owned subsidiary of MECOR Group, Inc., a Fortune 500® company with over $5.9 billion in annual revenues. Gibson specializes in the design, installation, and maintenance of distribution systems. At the time of Austin's termination, Gibson employed well over five hundred (500) employees; Gibson is one of Chicagoland's largest electrical and telecommunications contractors.

**ANSWER:**    Defendant admits that it is a New Jersey corporation doing business in Illinois and has a facility at the address alleged in Paragraph 11. Defendant admits that it is an indirect subsidiary of EMCOR Group, Inc. (a Fortune 500 company) that specializes in the design, installation, and maintenance of distribution systems and employed over 500 employees at the time of Plaintiff's termination. Defendant is without sufficient information or knowledge to either admit or deny the vague allegations in Paragraph 11 related to the revenues of EMCOR Group and Defendant's standing in "Chicagoland" and, therefore, Defendant denies those allegations. Defendant denies all remaining allegations contained in Paragraph 11.

## FACTUAL ALLEGATIONS

    12.    Austin worked primarily as a Warehouse Driver for the Defendant from on or about March 17, 1999 until his termination on or about September 24, 2004.

**ANSWER:**    Defendant admits that Plaintiff held the position of Warehouse Driver. Defendant denies all remaining allegations contained in Paragraph 12.

DC01/ 2116188.1

13. During his employment with Defendant, Austin performed his job satisfactorily at all times, and had an excellent employment record.

**ANSWER:** Defendant denies the allegations contained in Paragraph 13.

14. When Austin began working for Defendant, his Warehouse Supervisor was Jim Walsh, a White male.

**ANSWER:** Defendant admits the allegations contained in Paragraph 14.

15. During his employment, Walsh took numerous medical leaves. On occasion, Walsh's leaves extended for a period of months.

**ANSWER:** Defendant denies the allegations contained in Paragraph 15.

16. During Austin's employment, he assumed the majority of Walsh's job duties when Walsh was absent due to medical leaves, vacation time, regular time off, or other reasons.

**ANSWER:** Defendant denies the allegations contained in Paragraph 16.

17. During Walsh's absences from work, Austin satisfactorily performed the functions of the Warehouse Supervisor position.

**ANSWER:** Defendant denies the allegations contained in Paragraph 17.

18. Austin was trained in all aspects of the Warehouse Supervisor position, and was groomed to assume the Warehouse Supervisor position.

**ANSWER:** Defendant denies the allegations contained in Paragraph 18.

19. On June 12, 2002, Austin's performance evaluation, completed by Defendant, indicated that one major objective for the coming year was that Austin was to become Assistant Warehouseman.

**ANSWER:**   Defendant admits that, in Plaintiff's June 12, 2002 evaluation, one of Plaintiff's objectives for the coming year was to earn the position of Assistant Warehouseman. Defendant denies all remaining allegations contained in Paragraph 19.

20.   On or about April 1, 2003, Defendant posted notice that the position of Warehouse Supervisor had become available.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 20.

21.   Austin informed Defendant that he was interested in the position of Warehouse Supervisor, and was interviewed for the position on or about April 3, 2003.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 21.

22.   Defendant did not promote Austin from Warehouse Driver to fill the open Warehouse Supervisor position.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 22.

23.   On or about May 6, 2003, Defendant hired John Tricoci, a non-Black male, to fill the position of Warehouse Supervisor.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 23.

24.   At the time of his hire, Tricoci did not have the experience or knowledge of the position that Austin had acquired during his time with the Defendant.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 24.

25.   At the time of his hire, Tricoci did not possess certain certifications, such as the forklift certification and/or the State of Illinois CDL license, necessary to perform the duties listed as required in the Warehouse Supervisor job description.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 25.

26. At the time of Tricoci's hire, Austin was assigned to train him in aspects of the Warehouse Supervisor position.

**ANSWER:** Defendant denies the allegations contained in Paragraph 26.

27. On or about May 20, 2003, Austin filed Charge I, alleging that the Defendant had discriminated against him by failing to promote him and hiring a less qualified non-Black employee from outside the Company, in violation of Title VII.

**ANSWER:** Defendant admits the allegations contained in Paragraph 27, but denies the allegations contained in Plaintiff's EEOC charge.

28. On May 19, 2004, the EEOC issued a "cause" determination on Austin's EEOC Charge I, which was delivered to the Company.

**ANSWER:** Defendant admits that the EEOC issued a "cause" finding on March 30, 2004. Defendant denies all remaining allegations of Paragraph 28, including the implication that the EEOC was correct in its finding.

29. In or around June 2004, Tricoci requested that Austin arrive at work early one day. However, when Austin arrived per Tricoci's instructions, he was pretextually written up for working overtime with authorization.

**ANSWER:** Defendant denies the allegations contained in Paragraph 29.

30. In or around June 2004, Defendant pretextually wrote Austin up for making a wrong delivery stop, and refused to remove the write-up from Austin's file until it conducted an investigation at the request of Austin and found that Austin had not made a wrong delivery stop.

**ANSWER:** Defendant admits that, prior to June 30, 2004, it wrote up Plaintiff concerning a failed delivery but later rescinded and removed the write-up from Plaintiff's personnel file. Defendant denies all remaining allegations contained in Paragraph 30, including the allegation that the write-up was pretextual.

31.     After June 2004, in an attempt to establish a pretext for terminating Austin in retaliation for Charge I, then Senior Vice President of the Company, Daniel Fitzgibbons, coerced numerous employees of the Defendant to wrongfully implicate Austin in unlawful, unethical, and/or terminable offenses which Austin did not commit.

**ANSWER:**  Defendant admits that several non-management individuals accused Plaintiff of selling drugs.  Defendant further admits that selling drugs is an unlawful, unethical, and terminable offense.  Defendant denies all remaining allegations contained in Paragraph 31.

32.     On or around September 22, 2004, Fitzgibbons contacted one of Austin's co-workers, an employee of the Defendant, and asked him to sign and submit a false statement alleging that Austin had sold drugs and made verbal threats towards him and his family.

**ANSWER:**  Defendant admits that two of Plaintiff's co-workers notified management that Plaintiff had sold them drugs and threatened them with violence.  Defendant denies all remaining allegations contained in Paragraph 32.

33.     On or around September 23, 2004, Fitzgibbons contacted another of Austin's co-workers, an employee of the Defendant, and asked him to sign and submit a false statement alleging that Austin was a drug dealer who had threatened him.

**ANSWER:**  Defendant admits that two of Plaintiff's co-workers notified management that Plaintiff had sold them drugs and threatened them with violence.  Defendant denies all remaining allegations contained in Paragraph 33.

34.     Fitzgibbons wanted to terminate Austin as retaliation for Austin's filing of EEOC Charge I and the fact that the EEOC found in favor of Austin.

**ANSWER:**  Defendant denies the allegations contained in Paragraph 34.

35.     Defendant threatened to terminate and/or discipline employees who refused to sign false statements presented to them by Defendant regarding Austin's behavior.

**ANSWER:**  Defendant denies the allegations contained in Paragraph 35.

DC01/ 2116188.1

36. In light of Fitzgibbons' threats, Austin's co-workers provided false statements to Defendant regarding Austin's behavior.

**ANSWER:** Defendant denies the allegations contained in Paragraph 36.

37. On or about September 24, 2004, Austin was told that the Company determined that he had been selling drugs to Defendant's employees.

**ANSWER:** Defendant admits the allegations contained in Paragraph 37 except to state that this information was shared with Plaintiff on September 23, 2007, not September 24, 2007.

38. On or about September 24, 2004, Austin was frisked by employees of the Defendant for drugs and weapons. No drugs or weapons were found.

**ANSWER:** Defendant admits that it searched Plaintiff for weapons with Plaintiff's consent, and that no weapons or drugs were found. Defendant denies all remaining allegations contained in Paragraph 38.

39. Defendant offered Austin the opportunity to resign, and informed him that if he resigned, Defendant would not contest his application for unemployment insurance benefits.

**ANSWER:** Defendant admits that it offered Plaintiff the opportunity to resign in lieu of termination and to have any claim for unemployment benefits unopposed. Defendant denies all remaining allegations of Paragraph 39.

40. Austin refused the offer to resign, and denied that he had sold drugs, made threats, or carried a gun.

**ANSWER:** Defendant admits that Plaintiff declined the opportunity to resign. Defendant denies all remaining allegations contained in Paragraph 40.

41. Austin was pretextually terminated on or about September 24, 2004 in retaliation for filing Charge I.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 41.

## COUNT I – TITLE VII
## DISCRIMINATION ON THE BASIS OF RACE

42. Plaintiff incorporates paragraphs 1-41 as though fully restated herein.

**ANSWER:**   Defendant incorporates its responses to Paragraphs 1 through 41 as if restated herein.

43. Austin was the most qualified individual who applied for the vacant Warehouse Supervisor position in or around April 2003.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 43.

44. Defendant typically fills open positions by promoting employees from within the Company.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 44.

45. Defendant offered the Warehouse Supervisor position to a non-Black individual from outside the Company.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 45.

46. Defendant failed to offer Austin the promotion from Warehouse Driver to Warehouse Supervisor based upon Austin's race, Black.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 46.

47. As a direct and proximate result of said act of discrimination, Austin has suffered and continues to suffer irreparable injury, including loss of employment, income, and other benefits, and has suffered and continues to suffer emotional distress, costs, expenses, and damage to his reputation.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 47.

DC01/ 2116188.1

48. Defendant's failure to promote Austin based on his race was willful and outrageous, warranting the imposition of punitive damages.

**ANSWER:** Defendant denies the allegations contained in Paragraph 48.

### COUNT II – TITLE VII RETALIATION

49. Plaintiff incorporates paragraphs 1-48 as though fully restated herein.

**ANSWER:** Defendant incorporates its responses to Paragraphs 1 through 48 as if restated herein.

50. Defendant disciplined Austin in June 2004 even though Austin had not committed any violations of Company policy or protocol.

**ANSWER:** Defendant denies the allegations contained in Paragraph 50.

51. Defendant disciplined Austin in June 2004 in retaliation for Austin's Charge of Discrimination with [sic] and "cause" finding from the EEOC.

**ANSWER:** Defendant denies the allegations contained in Paragraph 51.

52. After June 2004 and until Austin's termination, Defendant falsified statements alleging that Austin dealt drugs, made threats, and/or carried a gun, and then coerced its employees to sign these falsified statements.

**ANSWER:** Defendant denies the allegations contained in Paragraph 52.

53. At the time that Defendant coerced statements from its employees, Defendant knew of Austin's EEOC Charge I, and also had knowledge of the EEOC's "cause" finding.

**ANSWER:** Defendant denies the allegations contained in Paragraph 53, including the implication that the EEOC was correct in its finding.

54. Defendant coerced statements from its employees in an effort to build evidence against Austin.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 54.

55.   Defendant planned to terminate Austin because Austin had filed a Charge of Discrimination against the Company and had received a "cause" finding from the EEOC.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 55.

56.   By disciplining and terminating Plaintiff's employment in the manner described herein, Defendant Company has retaliated against Plaintiff in violation of Title VII.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 56.

57.   As a direct and proximate result of Plaintiff's unlawful discharge, Austin has suffered and continues to suffer irreparable injury, including loss of employment, income, and other benefits, and has suffered and continues to suffer emotional distress, costs, great expenses, and damage to his reputation.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 57.

58.   Defendant's retaliation against Austin for filing an EEOC Charge was willful and outrageous, warranting the imposition of punitive damages.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 58.

## COUNT III – SECTION 1981 RETALIATION

59.   Plaintiff incorporates paragraphs 1-58 as though fully restated herein.

**ANSWER:**   Defendant incorporates its responses to Paragraphs 1 through 58 as if restated herein.

60.   By terminating Austin's employment as described above and in Count II of this Complaint, Defendant has retaliated against Austin for asserting his right to make and enforce his employment contract regardless of his race, in violation of Section 1981.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 60.

      61.    As a direct and proximate result of Defendant's unlawful conduct, Austin has suffered and continues to suffer irreparable injury, including loss of employment, income, and other benefits, and has suffered and continues to suffer emotional distress, costs, great expenses, and damage to his reputation.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 61.

      62.    Defendant's retaliation against Austin in violation of Section 1981 was willful and outrageous, warranting the imposition of punitive damages.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 62.

Defendant denies that Plaintiff is entitled to any of the items requested in his Prayer for Relief in his Complaint.

## AFFIRMATIVE DEFENSES

<u>FIRST AFFIRMATIVE DEFENSE</u>

On information and belief, Plaintiff's claims for damages are barred, in whole or in part, by his failure to mitigate damages and/or by his mitigating earnings.

<u>SECOND AFFIRMATIVE DEFENSE</u>

Any award of punitive damages in this case is foreclosed by Defendant's good faith efforts to comply with all federal civil rights laws (*e..g*., Defendant's dissemination and adherence to an Equal Employment Opportunity Policy, non-discriminatory process for promotions, and thorough investigation into the allegations of Plaintiff dealing drugs on company time). Defendant may not be vicariously liable for any discriminatory employment

decisions of managerial agents that are contrary to Defendant's good-faith efforts to comply with the law.[2]

THIRD AFFIRMATIVE DEFENSE

Assuming for purposes of this defense that Plaintiff could demonstrate that his race was a motivating factor in the personnel actions he challenges, Defendant would have taken the same action in the absence of any such motivating factor.

FOURTH AFFIRMATIVE DEFENSE

Defendant had a legitimate non-retaliatory and non-discriminatory business reason for all decisions made with respect to plaintiff.

FIFTH AFFIRMATIVE DEFENSE

To the extent that plaintiff seeks recovery of damages that he has not yet incurred, his damages are speculative.

SIXTH AFFIRMATIVE DEFENSE

Plaintiff's Title VII claims are barred, in whole or in part, by the doctrine of laches. Plaintiff waited almost three years after conciliation failed with the EEOC to request his right to sue notice. This delay has, among other things, led to the unavailability of witnesses and the diminished recollection of witnesses and, thereby, prejudiced Defendant's ability to defend against Plaintiff's allegations.

---

[2] Kolstad v. American Dental Association, 527 U.S. 526, 546 (1999) ("in the punitive damages context an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith' efforts to comply with Title VII").

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Section 1981 claim is barred by the two year statute of limitations. Despite being terminated on September 23, 2004, Plaintiff waited until May 9, 2008, to file his Section 1981 claim based on his termination.

WHEREFORE, Defendant respectfully requests that this Court dismiss the action in its entirety, with prejudice, and award Defendant reasonable costs, including attorney's fees, that it expended in defending this action.

**Dated:** July 15, 2008

    Respectfully Submitted,

    s/Alisa H. Reff
John A. Berg
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL  60606-1698
Phone:  (312) 569-1000
Fax:     (312) 569-3000
John.Berg@dbr.com

And

Alisa H. Reff (admitted pro hac vice)
Drinker Biddle & Reath LLP
1500 K Street, NW, Suite 1100
Washington, DC  20005-1209
Phone: (202) 842-8852
Fax:    (202) 842-8465
Alisa.Reff@dbr.com

Attorneys for Defendant
Gibson Electric Co., Inc.